**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THE SHERWIN-WILLIAMS COMPANY,

                                            CASE NO.  10-13376

        Plaintiff,                         HON. LAWRENCE P. ZATKOFF

v.

CHARLES BOLTON, d/b/a BIG C'S
CUSTOM BODY PAINT AND
COLLISION REPAIR,

        Defendant.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on April 20, 2011.

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion to Dismiss Counts II and III of

Defendant's Counter-Complaint pursuant to Fed. R. Civ. P. 12(b)(6) [dkt 8].  The parties had fully

briefed the motion.  The Court, however, ordered the parties to submit additional briefing regarding

Plaintiff's Motion.  Both parties have filed additional briefing.  Therefore, pursuant to E.D. Mich.

L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted.  For the

reasons set forth below, Plaintiff's Motion to Dismiss Counts II and III of Defendant's Counter-

Complaint [dkt 8] is GRANTED.

## II. BACKGROUND

Plaintiff is an Ohio corporation with its principal place of business in Warrensville, Ohio. It sells automotive paints, coatings, and related products in Michigan.  Defendant, a resident of Michigan, operates a business that paints, repairs, and restores automobiles.  In May of 2010, Plaintiff and Defendant entered into a written contract (the "Supply Agreement"), which became effective on May 21, 2010.  Pursuant to the Supply Agreement, Defendant agreed to purchase exclusively all of his requirements for automotive paints, coatings, and related products from Plaintiff until the "net sales" equaled $180,000, as that term is defined in the Supply Agreement. Plaintiff also agreed to advance Defendant $25,000 after signing the Supply Agreement.[1]  Shortly after executing the Supply Agreement, Plaintiff paid Defendant the cash advance, and Defendant purchased products from Plaintiff in the amount of $3,766.00.  According to Plaintiff, Defendant then stopped purchasing Plaintiff's products, refused to return the cash advance, entered into a separate written contract with a competitor of Plaintiff, and purchased competing products from that competitor.  As a result of Defendant's alleged breach, Plaintiff filed a complaint seeking damages for breach of the Supply Agreement, and in the alternative, for unjust enrichment.

In response, Defendant filed a Counter-Complaint that alleges claims against Plaintiff for

---

[1]  The Supply Agreement lists several events ("Acceleration Events") that require Defendant to immediately repay the entire advanced amount:

> (i) if [Defendant] fails to pay when due any amount owned [sic] pursuant to this Agreement or breaches any other covenant or obligation under this Agreement; (ii) if [Defendant] terminates this Agreement for any reason prior to the expiration of the Term . . .; (vii) if [Defendant] for any reason ceases purchasing (or purchasing its requirements for) Products from [Plaintiff], or is purchasing merely a *de minimis* amount of Products for the primary purpose of avoiding operation of this provision.

breach of contract, fraud, and misrepresentation. Defendant alleges that he stopped purchasing Plaintiff's products because the products and technical support provided by Plaintiff resulted in defective paint and damage to Defendant's customers' automobiles. According to Defendant, Plaintiff was unwilling to rectify the defective paint and reimburse Defendant for the labor required to repair the damages to its customers' automobiles. Therefore, Defendant then purchased paint products and related supplies from competitors in the amount of $5,823.66. Defendant alleges that he has attempted to repay the advance, but Plaintiff has refused to accept payment.

Ultimately, Plaintiff filed the instant motion, seeking dismissal of Counts II (fraud) and III (misrepresentation) of Defendant's Counter-Complaint under Fed. R. Civ. P. Rule 12(b)(6) because Ohio's "economic loss" doctrine bars such claims in a breach of contract action, and because Defendant's Counts II and III fail to plead fraud with sufficient particularity pursuant to Fed. R. Civ. P. 9.

### III. STANDARD OF REVIEW

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a party's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that party's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial

3

plausibility when the party pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *See also Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

## IV. ANALYSIS

Under Ohio law,[2] generally, the breach of a contract excludes a party from asserting a tort claim based upon the same allegations. *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981) (applying Ohio law). In limited circumstances, a tort claim based upon the same allegations as a breach of contract claim may be pled if the duty allegedly breached exists independent from the contract. *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th cir. 1976) (applying Ohio law). To maintain the balance between tort law and contract, the Ohio courts adhere to the "economic loss" doctrine. *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 629 (Ohio 1989). Under the "economic loss" doctrine, a party who has suffered only losses due to breach of a contract has not been tortuously injured because the promisor failed to fulfil a duty that arises from the contract. *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 61 (S.D. Ohio 1986).

---

[2] The Supply Agreement states that "[t]his Agreement shall be governed by the internal laws of the State of Ohio," and the parties do not dispute the application of Ohio law to this case.

"Economic loss" includes direct and indirect losses. Direct economic loss is "the difference between the actual value of the defective product and the value it would have had had it not been defective." *Mead Corp. v. Allendale Mut. Ins. Co.*, 465 F. Supp. 355, 363 (N.D. Ohio 1979). Indirect economic loss is the "consequential losses sustained by the purchaser of the defective product, which may include the value of production time lost and the resulting lost profits." *Chemtrol*, 537 N.E.2d at 630.

Plaintiff claims that Defendant's tort claims—Counts II and III— must be dismissed based on the "economic loss" doctrine because in this breach of contract action, the "economic loss" doctrine restricts Defendant's damages to those allowed by Ohio's Uniform Commercial Code and the Supply Agreement. Additionally, Plaintiff argues that Defendant fails to plead his claims of fraud and misrepresentation with sufficient particularity to satisfy Fed. R. Civ. P. 9.

In response, Defendant makes three arguments. First, Defendant argues that he can assert his claim for breach of contract and, in the alternative, his claims for fraud and misrepresentation. Defendant relies on *Kabealo v. J.E. Grote Co.*, wherein the court allowed a party to assert both a breach of contract and a promissory estoppel claim because the record contained sufficient evidence from which reasonable minds could differ as to whether an express contract existed between the parties. *Kabealo*, No. 93APE12-1681, 1994 WL 411369, at *7 (Ohio Ct. App. Aug. 4, 1994). Second, Defendant argues that because the representations made by Plaintiff were made prior to entering into the Supply Agreement, such representations fall outside of the Supply Agreement's scope. In his third argument, Defendant asserts that his negligent misrepresentation claim is an exception to the "economic loss" doctrine according to *Haddon View Invest. Co. v. Coopers &*

*Lybrand*, 436 N.E.2d 212 (Ohio 1982). [3]

For the following reasons, the Court agrees with Plaintiff that the "economic loss" doctrine limits Defendant's claims to his breach of contract claim and is not convinced by Defendant's arguments.   In the instant case, Defendant's breach of contract claim alleges that Plaintiff's automotive paints, coatings, and related products failed to be comparable to Plaintiff's competitors' products and meet "the technical specifications provided by [Defendant]."   The faulty products caused damage to Defendant's customers' automobiles.   As a result of the breach, Defendant seeks the labor and expenses that were required to refinish his customers' automobiles and damages for "humiliation, indignity, outrage, and embarrassment."   For comparison, his fraud and misrepresentation claims are based upon Plaintiff's false promise and representation as to the quality of its products, and that it would provide technical support in obtaining the proper products for Defendant's proposed work.   In reviewing all three claims, Defendant asserts similar allegations in his breach of contract claim as he asserts in his fraud and misrepresentation claim, which Ohio law does not permit unless the duty Plaintiff allegedly breached in Defendant's fraud and misrepresentation claims exists independently of the Supply Agreement.   *See Battista*, 538 F.2d at 117; *Wolfe*, 747 F.2d at 710.   However, the alleged duty that Plaintiff breached is its duty to supply quality paint and technical support.   Plaintiff's duty to supply its products to Defendant is covered in the terms of the Supply Agreement, and it is implausible that Plaintiff's duties to Defendant exist

---

[3]Additionally, Defendant requests in his response brief to Plaintiff's motion to dismiss that the Court allow him to amend Counts II and III by combining them together under one count captioned "Fraud in the Inducement."   He also asks for additional relief to rescind the contract at issue.   The Court denies Defendant's request, as he fails to provide the Court with any legal authority that several short cursory sentences in a response to another party's motion to dismiss is the proper vehicle by which this Court may address Defendant's requested relief.

independent of the Supply Agreement.  Further, the apparent damages that Defendant alleges fall within those losses contemplated within the Supply Agreement or as either direct economic losses or indirect economic losses.  As such, the "economic loss" doctrine limits Defendant's remedies to his claim for breach of the Supply Agreement.

Moreover, Defendant's argument that he his permitted to plead in the alternative because reasonable minds may differ as to whether the parties entered into the Supply Agreement is illogical on the pleadings before this Court.  Defendant's cited case law—*Kabealo*—is distinguishable from the instant case.  In *Kabealo*, there was sufficient evidence to support a finding that either a contract did exist or it did not exist, as opposed to this case, where the parties do not dispute that an express contract exists between the parties.  *See Kabealo*, No. 93APE12-1681, 1994 WL 411369, at *7 (Ohio Ct. App. Aug. 4, 1994).  Plaintiff alleged in Paragraph 5 of its complaint that:

> On or about May 21, 2010, [Plaintiff] and [Defendant] entered into a written agreement, (the "Supply Agreement.")  For and in consideration of the mutual covenants and promises stated in the Supply Agreement, [Defendant] agreed, among other promises, to purchase all of his requirements for automotive paints, coatings, and related products exclusively from [Plaintiff] on the terms and at the prices set forth therein during the term commencing on May 21, 2010, and continuing until such date upon which net sales, as defined by the Supply Agreement, is equal to $180,000.

In Defendant's answer, Defendant admits to the "allegations contained in [paragraph] 5 of Plaintiff's Complaint."  Defendant also asserts in paragraph 12 of his Counter-Complaint that "On or about May 21, 2010, the parties did enter into a written supply agreement."  He further acknowledges in his response briefs that he may only be awarded damages on either his breach of contract claim or his fraud and misrepresentation claims.  As such, Defendant's argument that he can proceed on alternative claims is undermined by the undisputed fact that both parties agree they

7

entered into an express written contract—the Supply Agreement.

Moreover, Defendant's reliance on the fact that Plaintiff's representations regarding its products were made prior to formation of the contract, thus falling outside of the scope of the Supply Agreement, is misplaced.  The Supply Agreement states, "This Agreement constitutes the entire understanding and agreement between the parties hereto with reference to its subject matter.  No statement or agreement, oral or written, made prior to this Agreement shall vary or modify the written terms hereof."  Therefore, the Supply Agreement's language did contemplate representations made by the parties prior to entering into the agreement.  This also renders moot Defendant's argument that he can assert his claim for negligent misrepresentation because it is an exception to the "economic loss" doctrine.  Any representations made by Plaintiff did not modify the Supply Agreement, and Defendant, operating as a commercial business, could have simply negotiated for language regarding Plaintiff's oral representations to be included in the Supply Agreement.  As such, the Court finds that Defendant's arguments are unpersuasive, and that Ohio's "economic loss" doctrine bars Defendant's claims for fraud and misrepresentation.[4]  *See Battista*, 538 F.2d at 117 ("[I]t is no tort to breach a contract, regardless of motive.").  Accordingly, Defendant's Count II (Fraud) and Count III (Misrepresentation) are dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim of relief upon which this Court may grant relief.

## V. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that Plaintiff's Motion to

---

[4]  Because the Court has found that Defendant's claims are barred by the "economic loss" doctrine, the issue of whether Defendant's claims of fraud and misrepresentation sufficiently pled fraud with enough particularity under Fed. R. Civ. P. 9 is rendered moot.

8

Dismiss Counts II and III of Defendant's Counter-Complaint [dkt 8] is GRANTED.

IT IS SO ORDERED.


s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  April 20, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on April 20, 2011.


s/Marie E. Verlinde
Case Manager
(810) 984-3290

9