**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THE SHERWIN-WILLIAMS COMPANY,

           Plaintiff,

CASE NO. 10-13376
HON. LAWRENCE P. ZATKOFF

v.

CHARLES BOLTON, d/b/a BIG C'S
CUSTOM BODY PAINT AND
COLLISION REPAIR,

           Defendant.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 26, 2011.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment [dkt 25]. Defendant has not filed a response, and the time do so has elapsed. The Court finds that the facts and legal arguments are adequately presented in Plaintiff's papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the brief submitted. For the reasons set forth below, Plaintiff's Motion for Partial Summary Judgment is GRANTED.

### II. BACKGROUND

On August 25, 2010, Plaintiff filed its two-count Complaint, asserting: (Count I) breach of contract; and (Count II) unjust enrichment. In response to Plaintiff's Complaint, Defendant filed

a three-count Counter-Complaint against Plaintiff, asserting: (Count I) breach of contract; (Count II) fraud; and (Count III) misrepresentation. As the Court explained in its April 20, 2011, order, dismissing Counts II and III of Defendant's Counter-Complaint, the relevant facts are as follows:

> Plaintiff is an Ohio corporation with its principal place of business in Warrensville, Ohio. It sells automotive paints, coatings, and related products in Michigan. Defendant, a resident of Michigan, operates a business that paints, repairs, and restores automobiles. In May of 2010, Plaintiff and Defendant entered into a written contract (the "Supply Agreement"), which became effective on May 21, 2010. . . . Plaintiff also agreed to advance Defendant $25,000 after signing the Supply Agreement.
>
> Shortly after executing the Supply Agreement, Plaintiff paid Defendant the cash advance, and Defendant purchased products from Plaintiff in the amount of $3,766.00. According to Plaintiff, Defendant then stopped purchasing Plaintiff's products, refused to return the cash advance, entered into a separate written contract with a competitor[,BASF,] of Plaintiff, and purchased competing products from [BASF]. . . .
>
> Defendant alleges that he stopped purchasing Plaintiff's products because the products and technical support provided by Plaintiff resulted in defective paint and damage to Defendant's customers' automobiles. According to Defendant, Plaintiff was unwilling to rectify the defective paint and reimburse Defendant for the labor required to repair the damages to its customers' automobiles. Therefore, Defendant then purchased paint products and related supplies from competitors in the amount of $5,823.66.

According to the Supply Agreement, "The term of this Supply Agreement . . . shall commence on the Effective Date (May 21, 2010) and shall continue until the date upon which Net Sales . . . is equal to One Hundred Eighty Thousand and 00/100 Dollars ($180.000.00)." Def.'s Resp. Mot. Dismiss Ex. A, at para. 1. The Supply Agreement also provides for return of the $25,000 advance upon certain specified acceleration events:

> (i) if [Defendant] fails to pay when due any amount owned [sic] pursuant to this Agreement or breaches any other covenant or

2

> obligation under this Agreement; (ii) if [Defendant] terminates this Agreement for any reason prior to the expiration of the Term . . . ; (vii) if [Defendant] for any reason ceases purchasing (or purchasing its requirements for) Products from [Plaintiff], or is purchasing merely a *de minimis* amount of Products for the primary purpose of avoiding operation of this provision.

*Id.* Ex. A, at para. 5(B). In the event that Plaintiff's product purportedly breaches the specifications, the Supply Agreement provides for a notice and opportunity for cure prior to termination:

> Customer may send a written notice of breach to Sherwin-Williams that sets forth the details of the breach ("Notice of Breach"). Upon receipt of a Notice of Breach, Sherwin-Williams shall have a period of sixty (60) days to cure the breach ("Cure Period"). If Sherwin-Williams does not cure the breach within the Cure Period and no Acceleration Events have occurred, then Customer may terminate this Agreement after Customer repays to Sherwin-Williams a pro-rata portion of the Advance.

*Id.* Ex. A, at para. 6. With respect to relying on representations or agreements between the parties prior to entering the Supply Agreement and modification of its terms after it is executed, the Supply Agreement states:

> This agreement may not be amended or modified except by a written document, signed by the President or a Vice President of the Automotive Finishes division of Sherwin-Williams and signed by Customer, that specifically states it is an amendment or modification of this Agreement. . . . This agreement constitutes the entire understanding between the parties hereto with reference to its subject matter. No statement or agreement, oral or written, made prior to this Agreement shall vary or modify the written terms hereof.

*Id.* Ex. A, at para. 6.

Following the Court's order dismissing Defendant's Counts II (fraud) and III (misrepresentation) of Defendant's Counter-Complaint under Fed. R. Civ. P. Rule 12(b)(6), Plaintiff filed the instant motion for partial summary judgment. Plaintiff seeks summary judgment as to Counts I and II of its Complaint, limiting its relief as to liability, plus costs, as damages are uncertain

at this time. Plaintiff also seeks dismissal of Defendant's Count I of its Counter-Complaint—the only remaining count.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving

party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

### A. PLAINTIFF'S COUNT I: DEFENDANT'S BREACH OF CONTRACT

Under Ohio law,[1] a plaintiff must establish the following elements to maintain a breach of contract claim: "(1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff." *Res. Title Agency, Inc. v. Morreale Real Estate Servs.*, 314 F. Supp. 2d 763, 769 (N.D. Ohio 2004) (citations omitted).

In this case, the parties do not dispute that: (1) they entered a valid contract; (2) Plaintiff advanced $25,000 to Defendant and supplied Plaintiff's products to Defendant as required by the Supply Agreement; (3) Defendant ceased purchasing Plaintiff's products prior to purchasing $180,000 of Plaintiff's products as specified in the Supply Agreement; and (4) Defendant failed to allow Plaintiff sixty-days after the July 17, 2010, to cure the alleged breach.

Applying Ohio law, the Court first notes that as for element four, Plaintiff does not move for summary judgment with respect to damages in the instant motion. As for the remaining elements, Plaintiff has established that no genuine dispute exists. As to element one, the parties have supplied

---

[1]The Supply Agreement provides that "[t]his Agreement shall be governed by the internal laws of the State of Ohio," and the parties do not dispute that the application of Ohio law to this case is appropriate.

the Court with a copy of the Supply Agreement. As to element two, Plaintiff has shown through the testimony of Defendant, that Plaintiff supplied its products to Defendant when Defendant ordered them. Pursuant to the Supply Agreement, Plaintiff also advanced $25,000 to Defendant, which Defendant has retained.

As to element three, Defendant breached two provisions of the Supply Agreement, which he admits to during his deposition. First, the Supply Agreement provides that Defendant may terminate the Supply Agreement after sending written notice to Plaintiff of a breach. Plaintiff then is permitted sixty days to cure the breach. Even though Defendant sent written notice to Plaintiff on July 17, 2010, entitled "Notice of Breach," explaining the issues with Plaintiff's product, Defendant failed to allow Plaintiff sixty days to cure the breach. Prior to Defendant even sending the written notice to Plaintiff, he had already signed an exclusive agreement with a BASF. Defendant also admits to not returning a phone call from a representative of Plaintiff placed to Defendant shortly after Plaintiff received Defendant's Notice of Breach. Moreover, Defendant testified that he "apparently . . . did not" allow Plaintiff sixty days to cure the purported breach. Thus, Defendant breached the notice and cure provisions of the Supply Agreement.

Second, Defendant has retained the $25,000 advance despite the plain language of the Supply Agreement. Paragraph 5B states that "Customer shall pay the entire amount of the Advance to Sherwin-Williams . . . if customer for any reason ceases purchasing . . . Products from Sherwin-Williams." Paragraph 6 makes clear that Defendant may terminate the Supply Agreement, assuming Plaintiff would be unable to cure a purported breach in sixty days, "after [Defendant] repays to Sherwin-Williams a pro-rata portion of the Advance." Plaintiff has shown that Defendant has paid Plaintiff no portion of the advance. Thus, Defendant also breached material provisions of

the Supply Agreement regarding repaying the advance. As such, a reasonably jury would find that Plaintiff established the first three elements of a breach of contract. The Court grants Plaintiff summary judgment on Count I with respect to liability.

### B. PLAINTIFF'S COUNT II: UNJUST ENRICHMENT

In Ohio, a plaintiff may maintain an action for unjust enrichment where a defendant retains a benefit that in equity belongs to someone else. *Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 222 (6th Cir. 1992) (citing *Hummel v. Hummel*, 14 N.E.2d 923, 926–27 (Ohio 1938)). To establish a claim for unjust enrichment, a plaintiff must show: (1) he conferred a benefit on the defendant; (2) the defendant was aware of such benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying plaintiff for its value. *Seal Master Indus. v. Bay Area Seal Coating & Stripping*, No. L-05-1186, 2006 Ohio 3610, 2006 WL 1941528, at ¶ 42 (Ohio Ct. App. July 14, 2006) (citing *Hambleton v. R.G. Barry Corp.*, 465 N.E. 2d 1298, 1302 (Ohio 1984)). However, where a contract exists, the plaintiff may not seek damages under quasi-contractual theories of recovery, such as unjust enrichment. *Davis & Tatera, Inc., v. Gray-Syracuse, Inc.*, 796 F. Supp. 1078, 1085–86 (S.D. Ohio 1992).

As is evident from the record, the instant motion, and Defendant's deposition, the parties do not dispute the existence of a contract—the Supply Agreement. The parties also do not dispute that Defendant's conduct in ceasing to purchase products from Plaintiff was covered in the provisions of the Supply Agreement. Because a contract undisputedly exists between the parties, Plaintiff may not maintain a claim for unjust enrichment. *See Boston v. Sealmaster Indus.*, No. E-03-040, 2004 Ohio 4278, 2004 WL 1810324, at ¶ 38 (Ohio Ct. App. Aug. 13, 2004) ("A recovery for unjust enrichment could not occur . . . as a matter of law, because an actual contract existed concerning the

chassis; therefore, a quasi contract did not exist."). Plaintiff is denied summary judgment on Count II of its Complaint as Count II is dismissed as a matter of law.

### C. DEFENDANT'S COUNT I: PLAINTIFF'S BREACH OF CONTRACT

The Court now turns to Defendant's claim for breach of contract against Plaintiff. As the Court set forth when analyzing Plaintiff's claim for breach of contract against Defendant, Defendant breached the Supply Agreement by failing to follow the Notice and Cure provisions and return any portion of the $25,000 advance. Pursuant to Ohio law, "a material breach by one party relieves the other of its obligation to perform under a contract." *First Energy Solutions v. Gene B. Glick Co.*, No. 23646, 2007 Ohio 7044, 2007 WL 4554402, at ¶ 35 (Ohio Ct. App. Dec. 28, 2007). *See NFM/Welding Eng'rs, Inc. v. Univ. of Akron*, 110 Ohio Misc. 2d 31, 37 (Ct. Cl. 2000) (noting that if one party felt that the other breached its agreement, that party was bound per the agreement to provide notice and a ninety-day cure period, and failing to do so defeated that party's claim that the other party breached the agreement).

For reasons stated in Plaintiff's brief and the testimony of Defendant, the Court finds that Defendant's breach of the Supply Agreement relieves Plaintiff's obligations under the Supply Agreement. Even though Defendant testifies that he began purchasing products from Plaintiff's competitors due to Plaintiff's alleged deficient products, pursuant to the terms of the Supply Agreement, Defendant was required to notify Plaintiff of such deficient products and allow Plaintiff sixty days to cure. Defendant first provided written notice to Plaintiff on July 17, 2010. Defendant, however, failed to provide Plaintiff sixty days to cure before purchasing other paint products. The Supply Agreement requires that Defendant "use exclusively automotive paints and coatings manufactured and sold by" Plaintiff. The Supply Agreement also states that Defendant "shall

purchase from [Plaintiff] all of [Defendant's] requirements for" automotive paints and related products. Defendant first breached these material terms of the Supply Agreement, and thus may not maintain a breach of contract claim against Plaintiff. *NFM/Welding Engineers, Inc.*, 110 Ohio Misc. at 37. As such, the Court grants Plaintiff summary judgment on Count I of Defendant's Counter-Complaint. Because Count I was Defendant's only remaining claim in his Counter-Complaint, Defendant's Counter-Complaint is dismissed.

## V. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment [dkt 25] is GRANTED.

IT IS FURTHER ORDERED that Defendant's Counter-Complaint is dismissed.

IT IS FURTHER ORDERED that this case proceeds forward with respect to Plaintiff's damages due to Defendant's breach of the Supply Agreement.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: August 26, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 26, 2011.

                                                  S/Marie E. Verlinde
                                                  Case Manager
                                                  (810) 984-3290